UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

GLORIA R. BROWN,

                Plaintiff,              Case No.: 10-cv-14906
                                            Honorable Stephen J. Murphy, III
          v.                      Magistrate Judge David R. Grand

MICHAEL ASTRUE,
Commissioner of Social Security,

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [9, 10]

Plaintiff Gloria Brown brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions which have been referred to this court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.     RECOMMENDATION

For the reasons set forth below, the court finds that the Administrative Law Judge ("ALJ") erred in failing to consider limitations imposed on Brown by her treating physician in assessing her residual functional capacity ("RFC"). Thus, the ALJ's conclusion about the work that Brown could perform is not supported by substantial evidence. Accordingly, the court recommends that the Commissioner's Motion for Summary Judgment [10] be DENIED, Brown's Motion for Summary Judgment [9] be GRANTED IN PART to the extent that it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to

sentence four of 42 U.S.C. § 405(g), this case be REMANDED back to the ALJ for further proceedings consistent with this Report and Recommendation.

## II.    REPORT

### A.    Procedural History

On July 18, 2007, Brown filed an application for SSI, alleging disability as of March 1, 2002.[1]    (Tr. 83-85).    The claim was denied initially on September 19, 2007.    (Tr. 74). Thereafter, Brown filed a timely request for an administrative hearing, which was held on July 20, 2009 before ALJ John Dodson.  (Tr. 54-73).  Brown, represented by an attorney, testified, as did Vocational Expert ("VE") Christian R. Barrett.  (*Id.*).  On December 23, 2009, the ALJ found Brown not disabled.  (Tr. 12-26).  On October 19, 2010 the Appeals Council denied review.  (Tr. 1-5).  Plaintiff filed for judicial review of the final decision on December 10, 2010. [1]

### B.    Background

Because the full background of this case is not necessary to the resolution of the instant motions, the court will discuss only the relevant background.  In 1996 or 1997, Brown was hit by a car and injured her right leg and left arm.  (Tr. 57; 173).  She had two surgeries, in 2001 and in 2003, on her leg to address her injuries.  (Tr. 124; 130).  From at least 2001 through the July 20, 2009 hearing, Brown was being treated by Dr. Pramod Raval, M.D.[2]  During this time, Dr. Raval appears to have been Brown's primary physician, treating her for a number of ailments, including hypertension, high cholesterol, low back and bilateral knee pain, osteoarthritis, gastroesophageal reflux disease ("GERD"), allergies, and headaches.  (*Id.*).  Dr. Raval's notes

---

[1] Though Brown reported this as her alleged onset date, the ALJ referenced an alleged onset date of July 18, 2007, the date of her application.

[2] (*See* Tr. 145-72; 192; 202; 223; 227-28; 230-31; 237-42; 276-84; 301; 311; 332; 348-77; 379-80; 386-91; 402-10; 421-23; 426; 428; 430; 440).

are all handwritten and thus difficult to read.  In addition, a number of them are undated, or the date has been cut off in the copying process.  (*See e.g.* Tr. 149; 152-53; 157).  However, the records show at least 70 appointments where Dr. Raval or one of his assistants examined Brown, prescribed or managed her medications, and/or ordered additional tests.[3]  (*See generally* n.1).  Over the course of this period, Brown was consistently assessed with low back pain, later including some radiculopathy, which occasionally produced tingling or numbness in her legs and which increased upon exertion or bending, and decreased with medication.  (*Id.*; Tr. 421-23; 426; 428).  She also reported headaches (Tr. 421) and knee pain (Tr. 410), both of which improved with medication.  (*Id.*).  She had several positive straight-leg raising tests over the course of her treatment.  (Tr. 406; 410; 428; 430).  During this period, Brown was being prescribed a number of medications including: aspirin, Vicodin for pain, Xanax, and once Celebrex, presumably for arthritis.  (*See generally* n.1; Tr. 149)

In early 2008, Brown underwent a CT scan of her lumbar spine and knees and an MRI of her lumbar spine.[4]  (Tr. 268; 272; 411-12).  The CT scan showed no abnormalities in Brown's knees, but did show degenerate change at T12-L1 with an indentation upon the lateral posterior aspect of the spinal cord, similar changes at L1-L2 with posterior spur formation at the left facet joint, moderate degenerative changes at L2-L3, mild degenerative changes at L3-L4 and degenerative changes at the bilateral facet joints at L4-L5 and L5-S1.  (Tr. 268; 272).  The report also determined that further workup with an MRI would be helpful.  (*Id.*).  The subsequent MRI found no abnormalities in Brown's lumbar spine, except for some minimal bilateral facet arthrosis at L3-L4.  (Tr. 411).

---

[3] Where his assistants did the consultation, it appears Dr. Raval still signed off on the treatment notes.  (*Id.*).

[4] It appears that a lumbar MRI had previously been ordered by Dr. Raval in 2006, but there is no record of the results of that test in the record.  (*See* Tr. 351).

There is only one consultative physician exam in the record.  On September 12, 2007, Dr. V. Dang-Vu M.D. examined Brown for the State of Michigan.  (Tr. 173-75).  Dr. Dang-Vu found no lumbosacral tenderness and that pedal pulses were 2+ bilaterally.  (Tr. 174).  He also found that Brown was able to get up from the examination chair and table without assistance, and was able to heel walk, toe walk, tandem walk, squat and recover from a squat to a fair extent. (*Id.*).  She had a steady gait without the use of a walking aid.  (Tr. 175).  Her deep tendon reflexes were normal and a straight-leg raising test was negative to 90 degrees bilaterally.  (Tr. 174).  She also had a full range of motion in all extremities.  (Tr. 175).  Dr. Dang-Vu did not complete an RFC assessment of Brown.

At the hearing (and as reflected in the transcript), Brown's counsel tendered to the ALJ a report from Dr. Raval as well as a trial brief.  (Tr. 56).  The ALJ stated that he would "enter [those documents] into evidence," (*id.*), but apparently did not do so.[5]  Brown maintains that the "report" is a disability form Dr. Raval completed on July 15, 2009, a few days before hearing, where he assessed Brown's residual functional capacity, (Tr. 450-451), and the court has been given no reason to believe otherwise.

In the disability report, Dr. Raval appears to note that Brown retained the ability to sit and stand a total of eight hours a day (though he did not delineate how much each could be done at a time), walk some portion of the day (again, he did not specifically state how much), and occasionally bend.  (Tr. 450).  He found her ability to lift and to pull with her right arm was unlimited.  (Tr. 449-50).  Her ability to lift with her left arm was limited to two pounds frequently, as was her ability to pull with that arm.  (*Id.*).  Brown could frequently carry five pounds with her right arm and two pounds with her left.  (Tr. 450).  She could push three pounds

---

[5] The report became part of the record only later when Brown attached it to her Appeals Council review application.  (Plf. Brf. at 5).  The trial brief is not included in the record at all.  (*Id.*)

occasionally with either arm. (*Id.*). She had unlimited ability in her right arm for fine finger manipulation and some limited ability in her left, through the doctor did not specify what that limit was. (*Id.*). Dr. Raval determined that Brown would require a sit/stand option and would need to use a walking cane. (*Id.*). In the form's comments section, Dr. Raval noted that Brown was involved in a motor vehicle accident in 1997 followed by injury to her left shoulder, right leg and lower back. (Tr. 451).

In her initial disability reports, Brown reported that the conditions limiting her ability to work included arthritis, enlarged lung,[6] high blood pressure, and back and thigh problems. (Tr. 91). She stated that these conditions limited her ability to work due to problems walking, standing longer than twenty minutes and lifting. (*Id.*). She reported that she had two children, an eleven-year-old and a newborn. (Tr. 106). Her daily activities included doing some cooking and cleaning, shopping for food and clothes, driving, talking on the phone or visiting with friends, and taking care of her baby. (Tr. 105-109). Brown reported having trouble sleeping because of pain in her shoulder and her leg. (Tr. 106). She also reported difficulty with lifting, squatting, bending, standing, reaching, walking, kneeling, stair climbing and completing tasks. (Tr. 110). She did not report difficulty with sitting. (*Id.*). Brown reported receiving assistance from her son and significant other with cleaning, cooking and carrying things. (Tr. 112). She also reported using a cane to walk. (Tr. 111). She reported having difficulty with dressing because of the bending involved, and in getting out of the bathtub after bathing. (Tr. 106). She also reported not being able to carry her baby for very long or being able to walk far without stopping. (*Id.*). In a follow-up report Brown completed after initial denial of her claim, she reported new issues with her leg, including edema and pain at the bottom of her heal. (Tr. 114).

---

[6] This appears to be a mistype, as in the next section, she discusses her enlarged liver.

At the hearing, Brown testified that she lives with her significant other, her 13-year-old son and 2-year-old daughter.  (Tr. 59).  Her 27-year-old daughter visits every other day.  (*Id.*).  She testified that she stopped working in 2002 because she was unable to stand for long periods of time.  (Tr. 57).  She testified that she takes three to four Vicodin a day for pain, and Xanax twice a day to help her sleep.  (Tr. 58-59).  Brown testified that she has a hard time sleeping at night because of the pain in her arm and leg, and needed Xanax to help her sleep.  (Tr. 68).  Her daily activities included getting her son up for school around 7 or 7:30, and cooking breakfast with his assistance.  (Tr. 59-60).  Then she would get her daughter up with her son's help.  (Tr. 60).  Her significant other would help her wash and dress herself.  (Tr. 61).  Her older daughter would come over to help her with housework and shopping.  (Tr. 60).  Her home sedentary activities include: watching TV, reading books, doing crossword puzzles, playing computer games and talking on the phone.  (Tr. 60-61).  She also testified that she "will sit and play with the baby when [she] can," and that she has a little dog that she plays with.  (Tr. 60).  She testified that she drives approximately seven or eight times a month, occasionally visits a friend, and attends church twice a week.  (Tr. 60-61).  Brown testified that she naps a few days a week for 2 to 3 hours at a time due to migraine headaches and the effects of her medication, which make her drowsy.  (Tr. 63).  She testified that she had also been in two other car accidents close in time to the date of the hearing, and that she had been through some physical therapy for those, which had helped her condition.  (*Id.*).  Brown testified that she needs to use a cane when walking, and needs to elevate her right leg to hip height when sitting.  (Tr. 65-66).  She testified that she could sit 30-45 minutes before needing to get up, and that she could walk about a half a block with her cane before needing to stop.  (Tr. 67).

At the hearing the VE testified that, based upon the ALJ's RFC assessment – which did

6

not include any of the limitations identified in Dr. Raval's report – Brown was unable to return to her prior relevant work, but could perform other work in the national economy including packaging, sorting, inspection and assembly of which there were approximately 5,000 positions in the metropolitan Detroit area.  (Tr. 70).  Counsel then asked what the effect on that number would be if a person could only use one hand, to which the VE replied that such a limitation would affect the packaging and assembly jobs, but not the sorting or inspection jobs.  (*Id.*).  In response to counsel's questions, the VE also testified that while the definition of sedentary work required an ability to lift 10 pounds, the positions identified would probably involve lifting five pounds or less, so that if a person were limited to lifting two pounds with her left arm the number of available positions would be reduced to about 3,000 in the metropolitan Detroit area.  (*Id.*).  Counsel then asked about the need for a walking cane and to lie down during the work day.  (Tr. 71).  The VE testified that the use of a cane did not preclude any of the jobs identified, nor did the need to lie down during breaks.  (*Id.*).  However, if a person's need to rest exceeded the time allotted for breaks, that would preclude work activity.  (*Id.*).

### C.    Framework for Disability Determinations

Under the Act, SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" in relevant part as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity,

7

benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Schueunieman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240 at *21 (E.D. Mich. Dec. 6, 2011) *citing* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . .  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**D.     The ALJ's Findings**

The ALJ, following the five step sequential analysis, determined that Brown was not disabled because there was other work in the national economy which she could perform.  At Step One, the ALJ determined that Brown had not engaged in substantial gainful work activity since her application date.  (Tr. 17).  At Step Two he found that she had the following severe impairments: "chronic leg pain and low back pain, migraine headaches, hypertension, osteoarthritis, gastroesophageal reflux disease (GERD) and obesity."  (*Id.*).  He found that a previous history of alcohol and cocaine abuse did not affect his determination of her functional

8

ability and therefore was not material to his determination.  (Tr. 18).  At Step Three, the ALJ determined that Brown's impairments did not meet or medically equal a listed impairment.  (*Id.*).

The ALJ then determined that Brown had the following RFC:  "sedentary work . . . that does not involve climbing of ropes or scaffolds, avoids all concentrated exposure to extreme heat or unprotected hazards such as heights or machinery, and involves simple, one to two step tasks." (*Id.*).  In support of his RFC assessment, the ALJ found Brown's credibility lacking.  (Tr. 19). He found her daily activities, her mostly unremarkable clinical findings and her routine and conservative treatment were incongruent with the level of pain and limitation she testified to and reported experiencing.  (Tr. 19-22).  With regard to the clinical findings, he noted that an MRI on her lumbar spine was normal, and noted (mistakenly) that a CT scan on the same area was also normal.  (Tr. 21).  With regard to her treatment history, the ALJ stated:

> [O]ne might expect to see some indication in the treatment records of restrictions placed on [Brown] by a treating doctor.  Yet, a review of the records in this case reveals no restrictions recommended by any treating doctor.  In fact, the record does not contain any opinions from treating or examining physicians indicating that [Brown] is disabled or even has limitations greater than those determined in this decision.

(Tr. 20).  He further stated, "Additionally, there is no evidence from treating or examining physicians that establishes that Claimant has . . . a medically required need for an assistive device for ambulation despite the fact that she testified . . . she required the assistance of a cane for balance."  (Tr. 22).  At Step Four, the ALJ determined that Brown had no past relevant work to which she could return.  (Tr. 22-23).  At Step Five, he found that, based upon her age, education, work experience and RFC, there was a significant number of jobs in the national economy that Brown could still perform, based on the testimony of the VE.  (Tr. 23-24).

### E.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative

9

decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record, which must be considered as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.

10

*Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### F.    Analysis

Brown essentially seeks reversal or remand for two alleged errors: the ALJ's failure to consider Dr. Raval's disability function report and the ALJ's mischaracterization of the results of the CT scan, both of which Brown argues led to an incorrect RFC assessment, credibility determination, VE hypothetical and, ultimately, disability determination.  (*See generally* Plf. Brf. at 7-10).  Because the court finds that the first assignment of error regarding Dr. Raval's disability report requires remand of this case to the ALJ, it need not address the ALJ's mischaracterization of the CT scan.

Brown argues that the ALJ's failure to consider Dr. Raval's disability report constitutes error because it violates the regulation regarding the weight to be given to a treating source's opinion.  (Plf. Brf. at 9).  The Commissioner responds that because the report was not contained in the administrative record at the time it went to the Appeals Council, Brown is essentially seeking remand for consideration of new evidence under Sentence Six of the Act, and has neither argued nor established good cause for why the report, in existence at the time of the hearing, was not tendered to the ALJ.  (Def. Brf. at 9; 11-12).  The court rejects the Commissioner's position because it rests on a mistaken assumption about what transpired at the hearing before the ALJ.

11

It is fairly clear from the hearing transcript that Brown's counsel tendered the report, along with a trial brief, to the ALJ at the hearing. (Tr. 56). The ALJ stated that he would make both part of the record. (*Id.*). Yet he did not do so.[7] Thus, the report was not "new" evidence when Brown filed her Appeals Council brief, and she did not characterize it as such at that juncture. (Tr. 122). To the contrary, she characterized it as demonstrative of the ALJ's error in finding no such treating physician's report was in the record. (*Id.*). Thus the court finds that Dr. Raval's report was properly before the ALJ at the hearing.

As the opinion of a treating physician, the report should have been considered in the ALJ's decision. An ALJ "must give a treating source opinion controlling weight if the treating source opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal quotations omitted). If the ALJ declines to give a treating physician's opinion controlling weight, he must document how much weight he has decided to give it "considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id.* citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1526(d)(2) (ALJ must "give good reasons" for weight given to treating source opinion). An ALJ's failure to give such reasons "denotes a lack of substantial evidence, even where the conclusions of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

---

[7] *See supra*, fn. 5.

2:10-cv-14906-SJM-DRG   Doc # 13   Filed 02/17/12   Pg 13 of 15   Pg ID 540

Here, Dr. Raval's disability report is the only RFC assessment in the record from either a treating or a consulting physician, and thus there is no medical evidence in the record that directly contradicts it. Though not entirely complete, the report's contents generally bolster Brown's testimony (which the ALJ found lacking in credibility) about her inability to sit and stand for long periods of time, and her need for a cane. It also supports additional limitations that the ALJ did not include in his RFC assessment, including, for example, her inability to lift or carry more than two pounds with her left arm and to push more than three pounds with both arms. (Tr. 449-50). Furthermore, the length of time Dr. Raval has been treating Brown, and the frequency with which he treated her, supports a finding that his RFC assessment should have been carefully evaluated and given at least some weight by the ALJ.

Yet, because the ALJ mistakenly found that "a review of the record in this case reveals no restrictions recommended by ay treating doctor," (Tr. 20), he erroneously failed to consider those limitations in determining Brown's credibility and in posing the RFC questions to the VE. *Blakely*, 581 F.3d at 406. This failure was material because "an inability to lift or carry more than 1 or 2 pounds [as Dr. Raval's report indicated for Brown] would erode the unskilled sedentary occupational base significantly." SSR 96-9P, 1996 SSR LEXIS 6, 1996 WL 374185 (July 2, 1996). Of course, since the ALJ apparently failed to recall the report's existence when drafting his decision, he also failed to "give good reasons" (or any reasons) for essentially giving the report no weight as required by 20 C.F.R. § 404.1526(d)(2). That failure "denotes a lack of substantial evidence, even where [his] conclusions [] may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Regardless of the weight the ALJ ultimately gives the report on remand, he committed error in disregarding it altogether. Even if the ALJ gives the report only some weight, it could

13

have a material effect on his view of Brown's credibility, his RFC assessment, the hypotheticals he poses to the VE, the number of jobs available to Brown, and perhaps her entitlement to benefits. Thus, the ALJ's error was not harmless, and remand is appropriate. *See Stacy v. Comm'r of Soc. Sec.*, No. 10-3518, 2011 U.S. App. LEXIS 25269 at *7-8 (6th Cir. Dec. 19, 2011) (internal citations omitted) (error harmless only if remand would be "an idle and useless formality" as there would be no reason to believe that it "might lead to a different result").[8]

## III.   CONCLUSION

For the foregoing reasons, the court RECOMMENDS that Brown's Motion for Summary Judgment [9] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, the Commissioner's Motion be DENIED, and this case be REMANDED back to the ALJ for further proceedings consistent with this Recommendation.

Dated: February 17, 2012                         s/David R. Grand
Ann Arbor, Michigan                              DAVID R. GRAND
                                                 United States Magistrate Judge

## NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with

---

[8] Of course, remand may ultimately not result in an award of benefits to Brown. However, Dr. Raval's report and the other medical evidence in the record are sufficiently material to her credibility and RFC that a remand to the ALJ for their joint consideration will not constitute "an idle and useless formality."

specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 17, 2012.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager